1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11   ANTHONY BUTLER,                  ) Case No. CV 09-07028-AG (KK)
12                    Petitioner,     )
                                      )
13            v.                      ) FINAL REPORT AND
                                      ) RECOMMENDATION OF UNITED
14   K. HARRINGTON,                   ) STATES MAGISTRATE JUDGE
                                      )
15                    Respondent.     )
                                      )
16   _____ )
17

18       This Final Report and Recommendation is submitted to the Honorable

19   Andrew J. Guilford, United States District Judge, pursuant to 28 U.S.C. § 636 and

20   General Order 05-07 of the United States District Court for the Central District of

21   California.

22                                  **I.**

23               **SUMMARY OF RECOMMENDATION**

24       Anthony Butler ("Petitioner"), a California state prisoner proceeding pro se,

25   has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. §

26   2254(d), challenging his 2005 conviction for attempted murder in Los Angeles

27   County Superior Court.  Because the Petition's claims fail on their merits, the

28   Court recommends the Petition be denied.

## II.

## <u>CLAIMS FOR RELIEF</u>

Petitioner's two remaining claims,[1] as presented in his Petition, are as follows:

(1) <u>Claim Two:</u> Violation of Petitioner's Sixth and Fourteenth Amendment rights to an impartial jury because (a) Juror No. 7 fell asleep during trial, (b) Juror No. 8 fell asleep during trial, and (c) the trial judge never investigated whether Juror No. 8 had fallen asleep during trial.

(2) <u>Claim Three:</u> Violation of Petitioner's Sixth and Fourteenth Amendment rights to effective assistance of counsel, when trial counsel failed to advise Petitioner regarding allowing Juror No. 7 to stay on the jury.

Pet. at 5-6.[2]

## III.

## <u>PROCEDURAL HISTORY</u>

On October 28, 2005, following a jury trial in Los Angeles County Superior Court, Petitioner was convicted of attempted premeditated murder, in violation of California Penal Code sections 187(a) and 664.  Lodgment[3] ("lodg.") 21 at 113-

---

[1]     The Petition originally set forth five claims.  <u>See</u> Pet.  On September 5, 2015, the Court granted Respondent's Motion to Dismiss as to Claims One, Four and Five.  <u>See</u> ECF Docket No. 58.

[2]     The Court refers to the pages of the Petition as if they were consecutively paginated.

[3]     The Court's citations to Lodgments refer to the documents lodged by Respondent in support of the Motion to Dismiss and Answer.  ECF Docket Nos. ("Dkt.") 44, 47, 65.  Lodgment 21 is a copy of the Clerk's Transcript from Petitioner's trial court proceedings.  Any further citations to Lodgment 21 will be abbreviated as "CT."   Lodgment 22 is a copy of the Reporter's Transcript of Petitioner's trial court proceedings.  Any further citations to Lodgment 22 will be

(continued...)

119.  On November 28, 2005, the trial court sentenced Petitioner to life plus twenty-five years to life in state prison.  Id. at 132-33, 135-36.

On November 28, 2005, Petitioner filed a notice of appeal from the judgment of conviction.  Id. at 134.  On March 30, 2006, Petitioner filed his opening brief setting forth claims for failure to properly instruct the jury.  Lodg. 2. On June 23, 2006, the California Court of Appeal affirmed Petitioner's conviction in a reasoned decision on direct appeal.  Lodg. 4.

On August 20, 2006, Petitioner filed a petition for review to the California Supreme Court.  Lodg. 19.  On September 13, 2006, the California Supreme Court summarily denied review of the appeal.  Lodg. 5.

On August 16, 2007, Petitioner filed a petition for habeas corpus in the Los Angeles Superior Court setting forth claims for violation of his right to an impartial jury and ineffective assistance of counsel.  Pet. at 4.  On October 18, 2007, the Los Angeles Superior Court denied the petition.  Lodg. 1 at 7.

On November 1, 2007, Petitioner constructively[4] filed a petition for habeas corpus in the California Court of Appeal setting forth claims for violation of his right to an impartial jury and ineffective assistance of counsel.  Lodg. 6.  On December 5, 2007, the Court of Appeal denied the petition in a reasoned decision. Lodg. 7.

On January 19, 2008, Petitioner constructively filed a petition for habeas corpus in the California Supreme Court setting forth claims for violation of his

─────────────────────

[3](...continued)
abbreviated as "RT."

[4]      Under the "mailbox rule," a pleading filed by a pro se prisoner is deemed to be filed as of the date the prisoner delivered it to prison authorities for mailing, not the date on which the pleading may have been received by the court.  See Houston v. Lack, 487 U.S. 266, 270, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988); Anthony v. Cambra, 236 F.3d 568, 574-75 (9th Cir. 2000).

right to an impartial jury and ineffective assistance of counsel. Lodg. 8. On July 9, 2008, the California Supreme Court summarily denied the petition with citations to In re Swain, 34 Cal.2d 300, 304, 209 P.2d 793 (1949) and People v. Duvall, 9 Cal. 4th 464, 474, 37 Cal. Rptr. 2d 259 (1995). Lodg. 9.

On October 5, 2008, Petitioner constructively filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254(d) setting forth the following five claims: (1) failure to properly instruct the jury; (2) violation of Petitioner's right to an impartial jury; (3) ineffective assistance of counsel for failure to present a defense; (4) ineffective assistance of counsel for failure to advise Petitioner regarding replacing Juror No. 7 with an alternate; and (5) violation of the Confrontation Clause. Lodg. 10. In the Petition, Petitioner admitted the Confrontation Clause claim was unexhausted and he had a pending state habeas corpus petition regarding that claim. Id. at 6, 8. On November 14, 2008, the Court summarily dismissed the petition without prejudice pursuant to Sherwood v. Tomkins, 716 F.2d 632 (9th Cir. 1983).[5] Lodg. 11.

On September 20, 2008, Petitioner filed a second state habeas corpus petition in Los Angeles Superior Court setting forth claims for judicial abuse of discretion and violation of the Confrontation Clause. Lodg. 10 at 8. On January 1, 2009, the superior court denied the petition. Lodg. 12 at 14.

_____

[5]     Prior to 2013, the theory of Sherwood was that because a petitioner could obtain relief in a state proceeding, the relief would moot a federal petition, even if the grounds for the state petition might not be the same as the grounds for the federal petition, and therefore the federal court should not proceed while a state petition was pending. Sherwood, 716 F.2d 632. However, in Henderson v. Johnson, 710 F.3d 872 (9th Cir. 2013), the Ninth Circuit limited the reach of Sherwood to state court proceedings involving direct appeals, and ruled that it was error to dismiss a federal petition on Sherwood grounds without first giving the petitioner the opportunity to amend his petition to dismiss the unexhausted claims. Henderson, 710 F.3d at 873-74.

1    On March 5, 2009, Petitioner filed a second state habeas corpus petition in

2    the California Court of Appeal setting forth his Confrontation Clause claim.  Lodg.

3    12, 13.  On March 17, 2009, the Court of Appeal denied the petition.  Lodg. 14.

4    On April 6, 2009, Petitioner filed a second state habeas corpus petition in the

5    California Supreme Court setting forth his Confrontation Clause claim.  Lodg. 15,

6    16.  On September 9, 2009, the California Supreme Court denied the petition.

7    Lodg. 17, 18.

8    On September 21, 2009, Petitioner constructively filed the instant Petition

9    setting forth the following five grounds for relief: (1) failure to properly instruct

10   the jury ("Claim One"); (2) violation of Petitioner's right to an impartial jury

11   ("Claim Two"); (3) ineffective assistance of counsel for failure to advise Petitioner

12   regarding replacing Juror No. 7 with an alternate ("Claim Three"); (4) ineffective

13   assistance of counsel for failure to present a defense ("Claim Four"); and (5)

14   violation of the Confrontation Clause ("Claim Five").  Dkt. 1.

15   On October 1, 2009, the Court issued an Order to Show Cause why the

16   Petition should not be dismissed as untimely ("OSC").  Dkt. 3.  On November 9,

17   2009, Petitioner filed a response to the OSC.  Dkt. 6.  On November 19, 2009, the

18   Court issued a Report and Recommendation recommending the Petition be

19   dismissed as untimely.  Dkt. 8.  On December 17, 2009, Petitioner filed objections

20   to the Report and Recommendation.  Dkt. 11.  On January 15, 2010, the Court

21   entered Judgment dismissing the Petition with prejudice as untimely.

22   On June 24, 2014, the Ninth Circuit Court of Appeal reversed the Judgment,

23   finding Petitioner was entitled to equitable tolling regarding the "failure to

24   instruct" claim as well as any other claims that "were exhausted at the time the

25   district court erroneously dismissed [Petitioner's] first petition, relate back to any

26   properly exhausted claims, or are otherwise entitled to equitable tolling."  Dkt. 29

27   at 10-11.  The case was remanded and on November 12, 2014, Respondent was

28   ordered to respond to the Petition.  Dkt. 34.

On February 10, 2015, Respondent filed a Motion to Dismiss the Petition on the following grounds: (1) Claim One is barred by the anti-retroactivity doctrine set forth in <u>Teague v. Lane</u>, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) and fails to present a constitutional question; (2) Claims Two through Five are untimely; (3) Claims Two and Three are unexhausted; and (4) Claims Four and Five are procedurally defaulted. Dkt. 43. On April 21, 2015, the assigned Magistrate Judge[6] issued a Report and Recommendation recommending Claims One, Four and Five be dismissed and denying the Motion to Dismiss as to Claims Two and Three. Dkt. 52 at 10. On September 5, 2015, the Court issued an Order Accepting the Findings and Recommendation of the Magistrate Judge and dismissing Claims One, Four, and Five. Dkt. 58.

On November 3, 2015, Respondent filed an Answer, contending remaining Claims Two and Three are meritless.[7] Dkt. 43. Petitioner did not file a Traverse.

On December 21, 2015, the Court issued its original Report and Recommendation that the Petition be denied and the action dismissed with prejudice. Dkt. 67. On January 25, 2016, Petitioner filed objections to the original Report and Recommendation.[8] Dkt. 68. Thus, the Court herein issues a Final

---

[6] This case was reassigned to the undersigned Magistrate Judge on May 7, 2015. Dkt. 55.

[7] Respondent also contends Claims Two and Three are unexhausted for the reasons set forth in the prior Motion to Dismiss. Dkt. 43 at 9. Because the District Court already determined Claims Two and Three are exhausted, the Court declines to address this argument. <u>See</u> Dkt. 52.

[8] In his objections, Petitioner requests appointment of counsel to assist him in preparing for and conducting an evidentiary hearing. "[T]he sixth amendment right to counsel does not apply in habeas corpus actions." <u>Knaubert v. Goldsmith</u>, 791 F.2d 722, 728 (9th Cir. 1986). A district court is authorized to appoint counsel for a habeas petitioner when it determines the interests of justice require such

(continued...)

Report and Recommendation, addressing Petitioners objection in footnote 8.

## IV.

## RELEVANT FACTS

For a summary of the facts, this Court relies on the California Court of Appeal's reasoned decision on Petitioner's direct appeal:[9]

> [O]n November 12, 2003, Stanley Powell and David Menefield were in Powell's Long Beach apartment.  Powell testified as follows.  [Petitioner] knocked at the door, and later entered the apartment and asked if Powell had marijuana to sell.  Menefield subsequently let David Calhoun enter.
>
> Menefield left to get change for a $100 bill.  A man named Scott, an acquaintance of Powell, knocked on the door and Powell answered it.  Scott entered and immediately said, "'I'm cool.  I'm

---

[8](...continued)

appointment (18 U.S.C. § 3006A(a)(2)(B)); however, "[u]nless an evidentiary hearing is required, the decision to appoint counsel is within the discretion of the district court."  Knaubert, 791 F.2d at 728.  Moreover, in habeas proceedings, "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record."  Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998); see also Earp v. Ornoski, 431 F.3d 1158, 1173 (9th Cir. 2005).

Here, all of Petitioner's claims can be resolved by reference to the state court record.  Accordingly, the Court recommends Petitioner's request for an evidentiary hearing be **DENIED**.  In addition, because an evidentiary hearing is not required, the Court also recommends Petitioner's request for appointment of counsel be **DENIED**.

[9]    Because this factual summary is drawn from the California Court of Appeal's opinion, "it is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence."  Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2008) (citations omitted).  Petitioner has not challenged the accuracy of this summary.  Moreover, this Court has independently reviewed the trial record and finds the summary accurate.

good.  I'm cool on this.  Let's go.  Let's go.  I'm out of here.'"  Scott
then left.  Menefield returned with the change.  Marijuana was on a
counter.

[Petitioner] later pointed a gun at Powell's head and ordered
Powell and Menefield to the floor.  [Petitioner] demanded Powell to
give [Petitioner] the rest of the drugs and money.  Powell indicated
there were no drugs.

[Petitioner] entered another room and returned with a pillow.
[Petitioner] put the pillow against Powell's head, pressed the gun
against the pillow, and demanded the rest of the money and drugs.
Calhoun said, "He is lying.  Get him.  He's a lying mother f'er."
Calhoun also told Powell to get down before [Petitioner] smoked
Powell.

A struggle ensued and Powell pushed the pillow down.  Powell
had the tip of the gun and [Petitioner] told him to release the gun or
[Petitioner] would smoke him.  Calhoun repeatedly told [Petitioner] to
kill Powell because he was lying.  Powell and [Petitioner] struggled
for the gun, and [Petitioner] briefly released it.  [Petitioner] told
Powell that [Petitioner] was going to smoke Powell.

Another struggle for the gun ensued and, at that time,
[Petitioner] shot Powell in the chest through the pillow.  When
[Petitioner] shot Powell, [Petitioner] was holding the pillow and his
arm was extended.  [Petitioner] was holding the gun in his other hand,
and the gun was pointed at Powell.  After [Petitioner] shot Powell,
[Petitioner] and Calhoun fled.  Powell noticed that the phone in the
living room had been pulled out of the wall.

On May 12, 2005, Long Beach Police Detective Donald Collier
interviewed [Petitioner] in jail after he waived his Miranda rights.

8

[Petitioner] indicated as follows.  The victim improperly weighed the marijuana which he owed to [Petitioner] and everyone argued about it. The victim obtained a gun from a nearby drawer and pointed it at appellant, but appellant took the victim's gun.  [Petitioner] "dr[e]w" on the victim either before the victim obtained the victim's gun or after [Petitioner] took the victim's gun.  After [Petitioner] took the victim's gun, [Petitioner] made the victim get on the floor. [Petitioner] should have just walked away but he did not do so.

[Petitioner] grabbed the pillow because he was angry.  He was angry because the victim had retrieved a gun and had tried to shoot [Petitioner].  [Petitioner] grabbed the pillow from a nearby couch and fired his gun once, shooting the victim.  [Petitioner] thought he had shot the victim in the leg or knee.  [Petitioner] also indicated he fired three times.  [Petitioner] presented no defense evidence.

Lodg. 4 at 2-4 (footnote omitted).

# V.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

9

1   "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes

2   only 'the holdings, as opposed to the dicta, of th[e] [U.S. Supreme] Court's

3   decisions'" in existence at the time of the state court adjudication.  White v.

4   Woodall, ___ U.S. ___, 134 S. Ct. 1697, 1702, 1706, 188 L. Ed. 2d 698 (2014).

5   However, "circuit court precedent may be 'persuasive' in demonstrating what law

6   is 'clearly established' and whether a state court applied that law unreasonably."

7   Maxwell v. Roe, 628 F.3d 486, 494 (9th Cir. 2010).

8   Overall, AEDPA presents "a formidable barrier to federal habeas relief for

9   prisoners whose claims have been adjudicated in state court."  Burt v. Titlow, ___

10  U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013).  The federal statute presents

11  "a difficult to meet . . . and highly deferential standard for evaluating state-court

12  rulings, which demands that state-court decisions be given the benefit of the

13  doubt."  Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d

14  557 (2011) (internal citation and quotation marks omitted).  On habeas review,

15  AEDPA places the burden on petitioners to show the state court's decision "was so

16  lacking in justification that there was an error well understood and comprehended

17  in existing law beyond any possibility for fairminded disagreement."  Harrington v.

18  Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).  Put another

19  way, a state court determination that a claim lacks merit "precludes federal habeas

20  relief so long as fairminded jurists could disagree" on the correctness of that ruling.

21  Id. at 101.  Federal habeas corpus review therefore serves as "a guard against

22  extreme malfunctions in the state criminal justice systems, not a substitute for

23  ordinary error correction through appeal."  Id. at 102-03 (internal citation and

24  quotation marks omitted).

25  Where the last state court disposition of a claim is a summary denial, this

26  Court must review the last *reasoned* state court decision addressing the merits of

27  the claim under AEDPA's deferential standard of review.  Maxwell, 628 F.3d at

28  495.  See also Berghuis v. Thompkins, 560 U.S. 370, 380, 130 S. Ct. 2250, 176 L.

Ed. 2d 1098 (2010) (when a state supreme court denies discretionary review of a decision on direct appeal, the appellate court's decision is the relevant state-court decision for purposes of AEDPA's standard of review); Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

Here, the California Court of Appeal's December 5, 2007 opinion disposing of Petitioner's first state habeas corpus petition in that court (see lodg. 7) stands as the last reasoned decision with respect to Petitioner's claims and will be reviewed under AEDPA's deferential standard of review for claims "adjudicated on the merits." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 99.

## VI.

## DISCUSSION

**A.** **Petitioner Fails To Demonstrate Violation Of His Right To An Impartial Jury In Claim Two**

### 1.    Background

In Claim Two, Petitioner argues his right to an impartial jury was violated because Juror Nos. 7 and 8 fell asleep during trial and the trial court failed to investigate whether Juror No. 8 fell asleep during trial.  Pet. at 5.

Prior to closing arguments and before instructing the jury, Petitioner's counsel, Ms. Ely, raised the issue of Juror No. 7 possibly having fallen asleep. Outside the presence of the jury, the following conversation between counsel, Petitioner, and the court took place.

Ms. Ely: My client asked me to put on the record that Juror No. 7, who is always late and when she does come in, she is asleep, she is just not paying attention.

And I asked if they can be – if they were going to be cognizant busy.  I failed to ask if they're going to be falling asleep.  There were two jurors that said they would tend to fall asleep and one said they

11

tend to forget, and this juror said absolutely nothing.  I don't think she is paying attention at all.

The Court: I will watch her very carefully.  We talked very briefly about this a little while ago.  I did say I noticed at one time when I did look up and carefully watch her, that she was looking maybe sometimes towards the back of the courtroom, which we much prefer we look towards the front of the courtroom or specifically look at the witness, although that's not mandatory.

But I did not see anything leading me to believe that she had nodded off.  I did tell you before, and I will say it again, for the record, that I was watching her carefully to see if she closed her eyes or anything.  She didn't, but I had in mind having the bailiff take a little glass of water to her, which I do if that were to happen, but she was alert and I will watch her carefully.

Ms. Ely: And Juror No. 9 also.

The Court: I'll watch them all.

Ms. Saba: No. 7, I have seen myself several times, she was asleep.

The Court: If she was actually asleep, we have to decide whether you want to put the alternate on.[10]

Ms. Saba: I don't know if she was actually asleep.  But it was –

The Court: Do you want to put the alternate in?

Ms. Saba: No, not at this point.  But I just, for the record, she –

The Court: Let's talk about it off the record for a moment.

(A discussion was held off the record.)

---

[10]    Previously during trial, Juror No. 10 was replaced with one of the two alternates.  RT 188-89.

1         The Court: We'll go back on the record.

2         Ms. Ely: Yes.

3         The Court: Now, we're talking about what to do about Ms.

4 Saba's comment.  Frankly, I didn't notice her asleep, and I'm up in a

5 good position to watch, but that doesn't mean I'm watching every

6 second, every juror.

7         If both attorney's think that she may have been asleep, maybe

8 the wise thing to do is to put the alternate in.  What do you say?

9         Ms. Saba: Your honor, I saw her a few times with her eyes

10 close, nodding off, and I thought that she was asleep.

11         The Court: I understand what you say.  Do you want to have a

12 solution to this so you don't try a case for nothing in case you get a

13 conviction?

14         Ms. Saba: I don't know.  We are only left with one alternate.

15         The Court: So?

16         Ms. Saba: I'm just afraid that this is a little premature to replace

17 her.

18         The Court: If you think she might be or probably was actually

19 asleep, I think it would be wise to put the alternate in.

20         What do you think, counsel?

21         Ms. Ely: I just want to make the record.

22         The Court: What do you think I should do?

23         Ms. Ely: He has seen her nodding off a few times and would

24 just ask the Court to watch her tomorrow.

25         The Court: So on behalf of your client, you're not asking to put

26 the alternate in in light of what we developed here on this record?

27         Ms. Ely: No, that's correct.

28         The Court: And your client agrees?

1    Ms. Ely: My client agrees.

2    The Court: Is that true?

3    The Defendant: Yes, sir.

4    The Court: Okay.  Right now I will abide by what the defense

5    thinks.  I will watch carefully all of the jurors tomorrow.

6    Ms. Ely: Now I need to argue –

7    The Court: By the way, if somebody notices something and you

8    think I'm missing it, just tell me "I want to go to sidebar," and we'll

9    do it right away.

10   RT 334-37.

11   Before beginning the next day, the court questioned Juror No. 7 outside the

12   presence of the jury as follows:

13   The Court: Juror No. 7.  Are you Juror No. 7?

14   Juror No. 7: Uh-huh.

15   The Court: Okay.  The reason I asked you to come in here is

16   that yesterday I noticed at one point, as I looked at the jurors, that I

17   wasn't sure if you were wide awake or not.  I can't tell if somebody is

18   sleeping or not, but I want to have you tell me if you think you have

19   heard all of the evidence in this case?

20   Juror No. 7: Yes.

21   The Court: In other words, do you feel that you have not

22   nodded off, you have not slept though any of the evidence, or do you

23   feel that you might have?

24   Juror No. 7: No, I didn't sleep through the evidence.  I saw

25   when you were glaring at me.

26   The Court: So you feel you heard all of the evidence?

27   Juror No. 7: Yes, sir.

28   The Court: Thank you.  Did anybody want to ask anything.

14

1    Ms. Saba: I don't want to ask.

2    The Court: Ms. Ely?

3    Ms. Ely: No, your honor.  Thank you.

4    The Court: Ms. Saba?

5    Ms. Saba: No.

6    The Court: Thank you.

7    Juror No. 7: Thank you.

8  RT 340-41.

9       Juror No. 7 left the courtroom and the following conversation between

10  counsel, Petitioner, and the court took place:

11    The Court: In light of that, does anybody want me to do

12    anything different than what we decided yesterday to leave the jury

13    on?  Ms. Ely, are you satisfied to leave her on?

14    The Defendant: I'm talking about Juror No. 8, too.

15    The Court: I'm talking about Juror No. 7, who we just had out

16    here, are you satisfied to leave her on, Ms. Ely?

17    Ms. Ely: Are you?  It's your decision.

18    The Court: Are you going to give me an answer?

19    The Defendant: Yes, sir.

20    The Court: Do you want to leave her on?

21    The Defendant: Yes, we can leave her on.

22    The Court: Ms. Ely, do you agree?

23    Ms. Ely: Yes, your honor.

24    The Court: Ms. Saba, do you agree?

25    Ms. Saba: Yes.

26    The Court: Okay.  She will be left on.  Okay.

27    . . .

28

15

1    Ms. Ely: He says it was No. 8, also, who was dozing off, and he

2  doesn't think the verdict is going to come out correctly because she

3  was also dozing off.  He doesn't think she was listening.

4    The Court: I noticed nothing in that regard.  Did you notice

5  anything, Ms. Saba?

6    Ms. Saba: Nothing.

7    The Court: Did you notice anything, Ms. Ely?

8    Ms. Ely: Nothing, your honor.

9    The Court: I will continue to watch the jurors, as I always do.

10  But I have no evidence of another juror – a juror nodding off,

11  including Juror No. 8.

12    Ms. Ely: My client says that the bailiff noticed it, and told him

13  that he noticed it.

14    The Court: I will ask him.  I will ask him.

15    (A pause in the proceedings.)

16    Ms. Ely: The bailiff is here, your honor.

17    The Court: Mr. Lozada, the defendant just said in open court,

18  on the record, that you had told him that you saw Juror No. 8 nodding

19  off or asleep.  Did you notice whether Juror No. 8 – Now, remember

20  8, not 7 – Juror No. 8 was nodding off or seemed to be asleep?

21    The Bailiff: No, I don't remember.  I remember No. 7 was

22  mentioned, but not No. 8.

23    The Court: Did you mention anything like that to the defendant,

24  that you felt No. 8 was nodding off or asleep?

25    The Bailiff: No.  He didn't really say it out loud.  I couldn't

26  really hear. I looked at the box, and it looked like No. 7 was nodding

27  off, but not No. 8.

28    The Court: Thank you.

16

1    RT 342-44.

2    ## 2.    State Court Opinion

3    The California Court of Appeal denied Petitioner's claim on habeas review.

4    Lodg. 7.  The court noted Petitioner specifically agreed Juror No. 7 did not need to

5    be replaced with an alternate and Petitioner's counsel had brought to the attention

6    of the trial court that Juror No. 8 might have fallen asleep as well.  Id.

7    ## 3.    Legal Standard

8    A criminal defendant is entitled to a "fair trial by a panel of impartial,

9    'indifferent' jurors."  Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d

10   751 (1961).  "Due Process means a jury capable and willing to decide the case

11   solely on the evidence before it, and a trial judge ever watchful to prevent

12   prejudicial occurrences and to determine the effect of such occurrences when they

13   happen."  Smith v. Phillips, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78

14   (1982).  However, "[e]very incident of juror misconduct does not require a new

15   trial," United States v. Springfield, 829 F.2d 860, 864 (9th Cir. 1987), and habeas

16   relief is only warranted where the alleged juror misconduct "had a substantial and

17   injurious effect or influence in the jury's verdict."  See Mancuso v. Olivarez, 292

18   F.3d 939, 949-50 (9th Cir. 2002) (as amended) (citing Brecht v. Abrahamson, 507

19   U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)).

20   A trial judge has discretion in deciding how to deal with a sleeping juror.

21   Springfield, 829 F.2d at 864; United States v. Hendrix, 549 F.2d 1225, 1227 (9th

22   Cir. 1977) ("[I]t is within the trial court's discretion to determine whether and

23   when to hold an evidentiary hearing on [allegations of juror bias or misconduct].  If

24   the judge orders an investigative hearing, it is within his discretion to determine its

25   extent and nature."); see also Tracey v. Palmateer, 341 F.3d 1037, 1044 (9th Cir.

26   2003).  Where a juror has been found to be sleeping, a new trial may not be

27   required if the juror "did not miss essential portions of the trial and was able fairly

28   to consider the evidence."  United States v. Barrett, 703 F.2d 1076, 1083 n.13 (9th

1   Cir. 1983) (as amended).

2         **4.      Analysis**

3         Here, the trial judge properly exercised his discretion by inquiring whether

4   Juror Nos. 7 or 8 had fallen asleep.  Based upon the record developed by the trial

5   court, it appears neither Juror No. 7 nor Juror No. 8 fell asleep during trial.  RT

6   340-44.  While the prosecutor and defense counsel both noticed Juror No. 7

7   possibly "nodding off," when the court investigated and asked Juror No. 7 whether

8   she had fallen asleep or missed any evidence, she responded that she had not.  Id.

9   Petitioner specifically agreed no action needed to be taken as to Juror No. 7.  RT

10  334-37.

11        The trial court also investigated whether Juror No. 8 fell asleep.  RT 342-44.

12  Petitioner told the court that the bailiff had noticed Juror No. 8 asleep, but when

13  the court asked the bailiff, the bailiff confirmed he thought he noticed Juror No. 7

14  possibly "nodding off," but not Juror No. 8.  Id.

15        Moreover, even assuming the two jurors fell asleep, Petitioner has not

16  alleged or shown they missed "essential portions of the trial."  <u>Barrett</u>, 703 F.2d at

17  1083 n.13.  In fact, Petitioner has not identified what specific evidence, if any, the

18  jurors are alleged to have missed.  Finally, Petitioner has not demonstrated the

19  jurors were consequently rendered unable "fairly to consider the evidence."  Id.

20        Under these circumstances, Petitioner has failed to demonstrate that his right

21  to a fair and impartial jury was violated by juror misconduct.  Id.  Therefore, the

22  state court's denial of Petitioner's claim is not an unreasonable determination of

23  the facts or contrary to clearly established federal law.  28 U.S.C. § 2254(d).

24  Hence, Petitioner is not entitled to federal habeas relief on Claim Two.

25  **B.    Petitioner Fails To Demonstrate Ineffective Assistance Of Counsel In**

26        **Claim Three**

27        **1.      Background**

28        In Claim Three, Petitioner argues his trial counsel was ineffective for failing

18

1  to advise him that he should replace Juror No. 7 with an alternate.  Pet. at 6.

2  **2.      State Court Opinion**

3  The California Court of Appeal denied Petitioner's claim on habeas review,

4  as follows: "A review of the record indicates petitioner was well aware of the fact

5  that the first juror [Juror No. 7] could be replaced with an alternate.  Moreover,

6  petitioner personally and specifically agreed that such action need not be taken."

7  Lodg. 7 at 1.

8  **3.      Legal Standard**

9  For Petitioner to prevail on his ineffective assistance of counsel claim, he

10  must satisfy a two-prong test: (1) counsel's performance was deficient, and (2)

11  prejudiced resulted from the deficient performance.  Strickland v. Washington, 466

12  U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  A court evaluating an

13  ineffective assistance of counsel claim does not need to address both components

14  of the test if a petitioner cannot sufficiently prove one of them.  Id. at 697; see also

15  Thomas v. Borg, 159 F.3d 1147, 1152 (9th Cir. 1998).

16  To prove deficient performance, a petitioner must show counsel's

17  representation fell below an objective standard of reasonableness.  Strickland. 466

18  U.S. at 687-88.  However, establishing counsel's deficient performance does not

19  warrant setting aside the judgment if the error had no effect on the judgment.

20  Strickland, 466 U.S. at 691; see also Seidel v. Merkle, 146 F.3d 750, 757 (9th Cir.

21  1998).  Thus, a petitioner must also show prejudice, such that there is a reasonable

22  probability that, but for counsel's unprofessional errors, the result of the

23  proceeding would have been different.  Strickland, 466 U.S. at 694.

24  Moreover, a habeas court's review of a claim under the Strickland standard

25  is "doubly deferential."  Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct.

26  1411, 173 L. Ed. 2d 251 (2009).   The relevant question "is not whether a federal

27  court believes the state court's determination under the Strickland standard was

28  incorrect but whether that determination was unreasonable – a substantially higher

threshold." Id. (citations omitted).

4. **Analysis**

a. **Petitioner Failed To Show Counsel's Performance Was Deficient.**

The record reveals defense counsel, upon Petitioner's request, brought the issue of Juror No. 7 being inattentive and asleep to the trial judge's attention. RT 334-37. The trial judge then conducted an appropriate investigation into whether Juror No. 7 fell asleep or missed evidence. See Barrett, 703 F.2d at 1083. Upon inquiry from the trial judge, Juror No. 7 stated she did not "sleep through the evidence" and had heard all the evidence in the case. RT 341. The trial judge then specifically asked whether Petitioner wanted to leave Juror No. 7 on the jury, and Petitioner replied "Yes, we can leave her on." RT 342. Defense counsel also agreed to leave Juror No. 7 on the jury. Id. Petitioner was, thus, well aware of his ability to request removal of Juror No. 7. In addition, even assuming Juror No. 7 fell asleep, Petitioner fails to establish what testimony may have been missed. Under these circumstances, Petitioner fails to demonstrate defense counsel's failure to advise Petitioner that Juror No. 7 should be replaced was outside the wide range of reasonable professional assistance. See Fuller v. Hill, 292 F. App'x 545, 546-47 (9th Cir. 2008) (citing United States v. Springfield, 829 F.2d 860, 864 (9th Cir. 1987) (finding not every incident of juror misconduct, including a sleeping juror, requires a new trial)).

b. **Petitioner Failed To Show Prejudice**

Moreover, in light of the overwhelming evidence of Petitioner's guilt, Petitioner cannot establish prejudice resulting from the alleged deficient performance. Powell and Minefield testified Petitioner pulled out a gun and Petitioner and Calhoun demanded drugs and money after they had been let into Powell's apartment presumably to purchase marijuana. RT 56-57, 65-66, 72-74, 76-77, 196-98, 201, 205-08. When Powell stated he had no more than the small

amount he had offered to sell to Petitioner, Petitioner went into another room, returned with a pillow, and, after a brief struggle, shot Powell through the pillow. RT 76-78, 82-87.  Powell testified there had been marijuana belonging to Powell on the kitchen counter before the shooting that was not there afterward.  RT 71, 90. Minefield testified there was money in his pocket that Calhoun took from him.  RT 205, 212.  Petitioner then admitted in a recorded interview with Detective Collier, which was played for the jury, that he shot Powell because Powell had inaccurately weighed the marijuana and then pulled a gun on Petitioner.  CT 36. Even though Petitioner gained control of the gun, he admitted he picked up the pillow and shot Powell because he was angry.  CT 42, 45.

Hence, the state court's denial of Petitioner's ineffective assistance of counsel claim was not unreasonable, because Petitioner failed to establish another juror would have returned a different verdict.  See Strickland, 466 U.S. at 694.

## VII.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an order: (1) accepting the findings and recommendations in this Final Report and Recommendation; (2) denying Petitioner's request for an evidentiary hearing; (3) denying Petitioner's request for appointment of counsel; and (4) directing that judgment be entered denying the Petition and dismissing the action with prejudice.

DATED: February 1, 2016

_____
HON. KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE

21